Argued February 4, affirmed April 10, 1963

# SUNSHINE DAIRY *v.* JOLLY JOAN
### 380 P. 2d 637

*Kenneth M. Judd,* Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf, Portland.

*Donald W. McEwen,* Portland, argued the cause for respondent. On the brief were Cake, Jaureguy, Hardy, Buttler & McEwen and John R. Faust, Jr., Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

DENECKE, J.

The plaintiff dairy brought an action on an account stated against one of its former customers, the defendant restaurant. The jury returned a verdict for the plaintiff. The trial court set aside the verdict and entered judgment for the defendant on the ground that there was no evidence to support the plaintiff's cause of action. The only question on appeal is whether there was any evidence to support the jury's verdict.

"An account stated is an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment: * * *." *Steinmetz v. Grennon,* 106 Or 625, 634, 212 P 532.

The crux of an account stated is an agreement between the parties that a certain amount is owing and will be paid. The question here is,—was there such an agreement?

In 1951 the defendant restaurant did not pay the plaintiff dairy a bill rendered by the dairy to the restaurant in the approximate amount of $3,300. There is testimony that there was a dispute whether any or all of this bill was owed by the restaurant. In 1953 $1,000 was paid on this disputed bill, leaving a balance of about $2,300. From 1953 until the parties ceased doing business with one another in 1960, monthly statements were rendered by the dairy to the restaurant. Each month the statement contained an itemization of the charges for each day of the past month, and the unpaid balance carried forward from the last statement. Except in an inconsequential amount, the unpaid balance was always equal to or greater than this $2,300 resulting from the 1951 dispute.

The restaurant would make payment of the dairy's monthly statement the middle of the following month in an amount approximately equal to the charges made for deliveries in the previous month. The restaurant did not direct any application of such payments and the dairy always credited such payments on the total of the account, including daily charges and past due balance, and the balance would be reduced again to the $2,300 figure.

Mr. Karamanos, one of the dairy owners, testified that he was a social and business friend of Mr. Michos, the restaurant owner. He stated that from 1953 to 1959 he "used to kid [Mr. Michos]" about the balance owing every time they met and Mr. Michos jokingly said he did not have the money to pay. Mr. Michos died in 1959.

In December, 1961, the dairy filed an action against the restaurant, alleging that on February 1, 1959, an account was stated between the parties showing a balance of $3,658.59 and the defendant agreed to pay

the same. The plaintiff further alleged that the defendant paid approximately $1,300 on the account, leaving a balance of $2,300.

Why the February 1, 1959, statement was used no one explained. The statement for any month could have been used and the net amount, after payment of the charges from the past month, would have been the same.

The principal issue is whether the defendant impliedly or expressly acquiesced and promised to pay the amount shown by the statement of February 1, 1959.

"[A] statement of the same [account] rendered by one to the other and received without objection by the latter urged within a reasonable time becomes a stated account binding upon the parties    *    *    *." *Crim v. Thompson,* 98 Or 599, 613, 193 P 448.

This is the principle relied upon by the plaintiff. There is evidence that no express objection was made to the February 1, 1959, statement until not long before the lawsuit was filed.

■ We hold, however, that there was no evidence of acquiescence or implied assent to the account and no implied promise to pay. The above quotation from *Crim v. Thompson,* supra, states an accepted commercial practice. If one sends a statement containing certain charges or a balancing of mutual accounts and the receiver of the statement makes no objection or reply within a reasonable time, the commercial world reasons that the amount is accepted and payment will be forthcoming. That was not, however, what happened here. On February 1, 1959, a statement or bill for $3,600 was sent to the restaurant. The customer, however, did not remain silent or inactive. The customer promptly paid the charges for the last month

and left unpaid $2,300, a practice the customer had followed for six years. After February 1, 1959, the customer continued the same practice as long as it continued to do business with the dairy, another 19 months. What legal or commercial reasoning can be twisted to draw an inference from this course of conduct that the customer has impliedly acknowledged that it owed the dairy?

When one pays 12 times a year for eight years a specific portion of an account and each of such times does not pay another portion of the account contained in such statement a strong suspicion would arise in the mind of a man of business that the payor disputes his liability for the latter portion of the account. Certainly, no inference of acquiescence to such unpaid portion arises.

The plaintiff also contends that it is entitled to be paid on the account stated because there was testimony from which the jury could infer that the restaurant's general manager *expressly* acknowledged the correctness of the account and agreed to pay it. Mr. Karamanos testified that the Jolly Joan's manager, Mr. Howser, told him, "You say we owe the bill and we are going to pay the bill, but give us a little more time to catch up on some bills and we will pay it." Mr. Howser denied this conversation, which is claimed to have taken place in early 1960 or later.

■■ An express acquiescence and promise to pay will support an account stated. However, this was not an acquiescence and promise to pay an account stated on February 1, 1959. It was an oral agreement to pay a bill which allegedly became due in 1951. Jolly Joan's representative was not talking about the account rendered on February 1, 1959. He was not agreeing to

pay a current account of $3,600 or $2,300. He was talking about this old 1951 bill of $2,300.

The distinction between a current account with a balance of $2,300 and an old account in such amount is stated by the plaintiff's reply brief. The defendant in its answer and brief contends that the statute of limitations bars the plaintiff's claim because the statement of account was never acknowledged in writing by the defendant and the promise to pay was not made in writing.[1]

Plaintiff's reply to the argument is as follows:

"The statute of limitations is not involved in this action. The account was treated on a first in-first out basis by plaintiff * * * and defendant * * *, and the jury found that the account did not accrue prior to 1953, as alleged by defendant * * *. That was also a question for the jury * * * which found contrary to defendant's allegations. The statement in question contained a total demand, the latter being the basis of the cause of action, against which defendant made payments leaving a balance due and owing.

"It is imperative to keep in mind that we are concerned with a series of transactions and not just one. These cases relied on by defendant involved a series of demands relating to a single transaction, or a single demand relating to a single transaction. They do not support its position."

The dairy's position is that the old debt of 1951, as reduced by the 1953 payment, was paid long ago because as each check was received from the restaurant the dairy applied it against the oldest charge.

---

[1] ORS 12.230, in the chapter on limitations of actions, states: "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; * * *."

The dairy then reasons the account stated did not include the old debt; the account stated was for $3,600, comprised of the most recent charges totaling that amount. There was no evidence that the defendant expressly promised to pay this 1959 account stated of $3,600. The only evidence was that it agreed to pay the balance of the old 1951 account. An oral agreement to pay this old account would not have enabled the plaintiff to recover and plaintiff did not so contend. See Annotation 14 ALR 240, 247 (1921); 2 Restatement 793, Contracts § 422.

Judgment affirmed.